UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-cv-23346-BLOOM/Otazo-Reyes

AM CRESPI MIAMI, LLC,

    Plaintiff,

v.

CENTURY SURETY COMPANY,

    Defendant.
_____/

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

**THIS CAUSE** is before the Court upon Defendant Century Surety Company's Motion for Summary Judgment, ECF No. [27] ("Motion"). Plaintiff Sandra Walker filed a Response in Opposition, ECF No. [44] ("Response"), to which Defendant filed a Reply, ECF No. [46] ("Reply"). The Court has carefully reviewed the Motion, all opposing and supporting submissions,[1] the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted in part and denied in part.

**I.  BACKGROUND**

Plaintiff seeks recovery from Defendant under a surplus lines commercial insurance policy ("Policy") for damage to two tenant-occupied buildings caused by a backup from the properties' plumbing system. On August 16, 2022, Plaintiff initiated this breach of contract action against Defendant in the Circuit Court of the Eleventh Judicial Circuit for Miami-Dade County, Florida, Case No. 2022 015395 CA 01. ECF No. [1]. Defendant thereafter removed the action to federal

---

[1] Defendant filed a Statement of Material Facts, ECF No. [28] ("SMF"), with its Motion for Summary Judgment. Plaintiff filed a Statement of Material Facts in Opposition to Defendant's Motion for Summary Judgment and a Statement of Additional Material Facts ("SAMF"), ECF No. [43], with its Response to Defendant's Motion.

court and on October 24, 2022, Plaintiff filed its Amended Complaint. ECF No. [8]. Plaintiff asserts a single count of breach of contract, alleging that Defendant breached the Policy by denying full coverage and refusing to "pay the full amount of the claim or in the alternative, a reasonable amount." ECF No. [8] ¶ 8. Plaintiff alleges that Defendant's failure to do so "was contrary to the terms of the policy and/or Florida law." *Id.*

On July 31, 2023, Defendant filed the instant Motion seeking summary judgment. Defendant asserts that the undisputed material facts establish that the Policy's Amendatory Endorsement applies to Plaintiff's claim and limits Plaintiff's loss recovery to $5,000.00 per building and Defendant has already tendered in full the $10,000.00 payment owed. Plaintiff responds that the Amendatory Endorsement is ambiguous as to whether it applies to water damage regardless of whether the damage originated from on or off the premises. Plaintiff contends that because the parties dispute the source of the water damage, Defendant has not shown that it is entitled to judgment as a matter of law. Defendant replies that the Amendatory Endorsement unambiguously applies regardless of where the water damage originated from, and Defendant is consequently entitled to judgment as a matter of law.

### A. MATERIAL FACTS

Based on the Parties' briefings and the evidence in the record, the following facts are not genuinely in dispute unless otherwise noted.

On June 17, 2019, Plaintiff purchased commercial property consisting of two buildings located at 8227 Crespi Blvd. and 8235 Crespi Blvd., Miami Beach, Florida 33141 ("Properties"). SMF ¶ 1; RSMF ¶ 1. Defendant thereafter issued Plaintiff an "all risk" commercial surplus lines insurance policy, Policy No. CCP 972805, with effective dates of March 20, 2021 to March 20, 2022. *See generally* ECF No. [8-1]; SMF ¶ 11; RSMF ¶¶ 11, 49. Plaintiff's Amended Complaint alleges that during the policy period, and on or about January 15, 2022, the property was damaged

by backup from the property's plumbing system. ECF No. [8] ¶ 5. On June 2, 2022, Defendant tendered payment of the $5,000.00 per location sub-limit to Plaintiff, totaling $10,000.00, pursuant to the Policy's Amendatory Endorsement. SMF ¶ 33; RSMF ¶ 33. It is disputed whether this payment was proper under the Policy. *Id.*

The Policy generally covers direct physical damage that occurs during the policy period. In the case of water damage, the Policy covers damage and subsequent repairs to any part of the building or structure or to the system or appliance from which the water or other substance escapes, subject to the Policy's applicable conditions, exceptions, and limitations. RSMF ¶ 50; ECF No. [8-1]. The Policy's coverage related to "Commercial Property Conditions" provides:

> **H. POLICY PERIOD, COVERAGE TERRITORY**
>
> Under this Coverage Part:
> 1. We cover loss or damage commencing:
>
>    **a.** During the policy period shown in the Declarations; and
>    **b.** Within the coverage territory.

ECF No. [8-1] at 81.[2]

The Building and Personal Property Coverage Form contains the following provisions:

> **A. Coverage**
> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

ECF No. [8-1] at 56.

The Building and Personal Property Coverage Form is subject to the Causes of Loss – Special Form, which provides in relevant part:

---

[2] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

3

> **A. Covered Causes Of Loss**
> When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.

ECF No. [8-1] at 107.

The Policy also contains an Amendatory Endorsement – Limited Property Extensions Form ("Amendatory Endorsement") that provides in relevant part:

> **Sewer, Drain, or Sump Backup or Overflow**
> You may extend the insurance provided by endorsement to include loss, whether it originates on or off the described premises, caused by water that backs up or overflows or is otherwise discharged from a sewer, drain, sump or sump pump or related equipment. However, we will not pay for direct physical loss or damage to Covered Property caused by or resulting from continued or repeated back up or overflow of water over a period 14 days. The most we will pay under this Coverage Extension in any one policy period, regardless of the number of occurrences, is shown in the Schedule above.
>
> However, we will not pay for direct physical loss or damage to Covered Property caused by or resulting from continued or repeated back up or overflow of water over a period 14 days.
>
> The most we will pay under this Coverage Extension in any one policy period, regardless of the number of occurrences, is shown in the Schedule above.

ECF No. [8-1] at 97.

The Amendatory Endorsement includes a Schedule of Coverages and Limits, which provides that losses from "Sewer, Drain, or Sump Backup or Overflow" are limited to $5,000.00 in insurance coverage. ECF No. [8-1] at 85.

## II. LEGAL STANDARD

### A. Summary Judgment

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citations to materials in the record,

4

including depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). "A factual dispute is 'material' if it would affect the outcome of the suit under the governing law, and 'genuine' if a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

A court views the facts in the light most favorable to the non-moving party, draws "all reasonable inferences in favor of the nonmovant and may not weigh evidence or make credibility determinations[.]'" *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1179 (11th Cir. 2019); *see also Crocker v. Beatty,* 886 F.3d 1132, 1134 (11th Cir. 2018) ("[W]e accept [the non-moving party's] version of the facts as true and draw all reasonable inferences in the light most favorable to him as the non-movant." (citation omitted)). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990) (citation omitted).

### III. DISCUSSION

Defendant seeks summary judgment on Plaintiff's claim of breach of contract. The Court begins its analysis with the Amendatory Endorsement, as Defendant contends that the plain language of this policy demonstrates that Defendant is entitled to judgment as a matter of law.

The Court must apply Florida law to interpret the Amendatory Endorsement, as this is a question of contract interpretation under diversity jurisdiction. *Canal Indem. Co. v. Margaretville*

of NSB, Inc., 562 F. App'x 959, 961 (11th Cir. 2014); *Mid-Continent Cas. Co. v. Am. Pride Bldg. Co., LLC*, 601 F.3d 1143 (11th Cir. 2010). Under Florida law, the interpretation of insurance policies is a matter of law reserved for the court. *Id.* An insurance policy should be given a construction that reflects the intent of the parties, *id.*, and policy provisions must be construed in accordance with the plain language of the policy. *Swire Pacific Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003). Ambiguous policy exclusions are construed against the drafter and in favor of the insured. *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000).

Defendant argues that the plain language of the Amendatory Endorsement squarely covers Plaintiff's loss and accordingly limits Plaintiff's recovery to $5,000.00 per building. ECF No. [27] at 4. Defendant argues that since it has already tendered full payment to Plaintiff—Plaintiff's breach of contract claims must fail as a matter of law. *Id.*

Plaintiff responds that the Amendatory Endorsement is not dispositive of its breach of contract claim because the policy is ambiguous. Plaintiff specifically contends that it is unclear whether the Amendatory Endorsement applies to water damage losses regardless of whether they originate from on or off the premises. ECF No. [44] at 7. Plaintiff argues that because the Amendatory Endorsement does not define the terms "sewer" or "drain," they must be "interpreted by the Court to refer to municipal systems that are off of the property." *Id.* Because the parties dispute where the damage originated from, Plaintiff argues that this interpretation demonstrates that there is a genuine dispute as to whether the Amendatory Endorsement applies. *Id.* Plaintiff asserts that this interpretation is compelled by the decisions in *Cheetham v. Southern Oak Ins. Co.*, 114 So. 3d 257 (Fla. 3 DCA 2013), and *Cameron v. Scottsdale Ins. Co.*, 726 Fed. App'x 757 (11th Cir. 2018).

In *Cheetham*, the parties disputed whether a water damage exclusion applied to plaintiff's

water damage claim and therefore provided a basis for defendant to deny coverage. 114 So. 3d at 259. The Court interpreted the water damage exclusion as only excluding coverage for water losses that originate from off the premises. *Id.* at 262-63. The Court determined that "exclusions from coverage contemplated by paragraphs a., b., and c. of the water damage exclusion relate to damage caused by water originating from somewhere other than the residence premises' plumbing system." *Id.* at 263. The Court interpreted paragraph b. together with paragraphs a. and c. of the water damage exclusion and accordingly defined "sewer" and "drain" as "devices that carry water and sewage away from the property." *Id.* (quoting *Old Dominion Ins. Co. v. Elysee, Inc.*, 601 So. 2d 1243, 1245 (Fla. Dist. Ct. App. 1992)).

In *Cameron*, the court discussed *Cheetham*'s interpretation of the applicable water damage exclusion and applied that interpretation to a similar water damage exclusion. *Cameron*, 761-62. The Court found that, "[b]esides a few minor and inconsequential variations in language," the two water damage exclusion policies were "virtually identical." *Id.* at 762. The court accordingly adhered to *Cheetham's* interpretation of the water damage exclusion and found that "the Water Exclusion relates to water damage caused in part by outside forces, such as weather-induced flooding, but not to damage caused by a failure of the premises' plumbing system due to age or deterioration." *Id.* As in *Cheetham*, the water exclusion policy in *Cameron* failed to define the terms "sewer" or "drain."

Defendant replies that the Amendatory Endorsement is unambiguous, and the decisions in *Cheetham* and *Cameron* are distinguishable. Moreover, Defendant posits that the decision in *Chabad of Key Biscayne v. Scottsdale Insurance Company*, 631 F. Supp. 3d 1250, (S.D. Fla. 2022), aff'd, No. 22-13603, 2023 WL 4399990 (11th Cir. July 7, 2023), supports its interpretation. ECF No. [46] at 8-9. In *Chabad*, the court interpreted an insurance policy's water exclusion and related

7

"Sewer Coverage Extension" that "allows up to $5,000.00 in coverage for damage 'otherwise discharged' from a 'sewer [or] drain.'" *Chabad*, 631 F. Supp 3d 1250, 1254. The court found that "[t]his language is clear and unambiguous." *Chabad*, 631 F. Supp 3d 1250, 1254. The court rejected the plaintiff's attempt to rely on *Cheetham* and *Cameron* to avoid the $5,000.00 coverage limitation, explaining that "[u]nlike the policies in *Cheetham* and *Cameron*, the Policy expressly defines drain and sewer and includes the Coverage Extension."[3] *Id.* at 1255. Defendant argues that *Chabad* supports finding that the Amendatory Endorsement is similarly unambiguous and applies to Plaintiff's claim.

The Court begins with the plain language of the Amendatory Endorsement. The Amendatory Endorsement provides in relevant part:

> **Sewer, Drain, or Sump Backup or Overflow.**
> You may extend the insurance provided by endorsement to include loss, whether it originates on or off the described premises, caused by water that backs up or overflows or is otherwise discharged from a sewer, drain, sump or sump pump or related equipment.

ECF No. [8-1] at 97.

It is undisputed that the damage caused to both Properties "by backup from the property's plumbing system" is a covered loss under the Policy. *Id.* ¶ 14; SAMF ¶ 14. The parties instead dispute whether the Amendatory Endorsement and its $5,000.00 coverage limit applies to Plaintiff's claim regardless of where the water damage originated. The Court analyzes whether the plain language of the Amendatory Endorsement applies regardless of where the water damage originated, or whether the Amendatory Endorsement is ambiguous.

---

[3] The Eleventh Circuit cited *Purdy Lane, Inc. v. Scottsdale Ins. Co.* for support, which similarly found that "[t]he addition of the definitions of 'drain' and 'sewer'—and specifically, the language 'on or away from the premises'—to the Water Exclusion is significant and serves to expand its scope, not keep it consistent with *Cameron* and *Cheetham*'s interpretations or narrow it." No. 20-80966-CIV, 2021 WL 1053283 at * 6 (S.D. Fla. Feb. 11, 2021) (quoting *John Raffell v. Scottsdale Ins. Co.*, Case no. 20-21719-CIV-ALTONAGA (Jan. 8, 2021)).

As in *Chabad*, the Amendatory Endorsement is clear and unambiguous, albeit for slightly different reasons. The Amendatory Endorsement provides coverage when a loss "*originates on or off the described premises*, [and is] caused by water that backs up or overflows or is otherwise discharged from a sewer, drain, sump or sump pump or related equipment." ECF No. [8-1] at 101 (emphasis added). The Court agrees that, like in *Chabad* and *Purdy*, the fact that the Amendatory Endorsement explicitly applies regardless of whether the water damage "originates on or off the described premises" is "significant and serves to expand its scope" compared to the water exclusion policies in *Cheetham* and *Cameron* that lacked this language. *Chabad*, 631 F. Supp. at 1255 n.4; *Purdy Lane, Inc. v. Scottsdale Ins. Co.*, 2021 WL 1053283 at *6. Instead of expanding the scope of the Policy by defining the terms "sewer" and "drain," the Amendatory Endorsement makes clear that losses "caused by water that backs up or overflows or is otherwise discharged from a sewer, drain, sump or sump pump or related equipment" are covered and subject to the $5,000.00 limitation "whether it originates on or off the described premises." ECF No. [8-1] at 97. The fact that the terms "sewer," "drain," "sump or sump pump or related equipment" are undefined does not create ambiguity, as the policy makes clear that it encompasses losses caused from any of those devices regardless of where they originate from. The Amendatory Endorsement therefore unambiguously applies regardless of where the backup from the Properties' plumbing system originated from.

Plaintiff argues that the decisions in *Cheetham v. Southern Oak Ins. Co.*, and *Cameron v. Scottsdale Ins. Co.* stand for the proposition that when the terms "sewer" or "drain" are undefined in the insurance policy in question, those terms must be interpreted as referring to "water that is coming off of the property." ECF No. [44] at 6. Plaintiff contends that this interpretation means that the Amendatory Endorsement only applies to backups originating from "off of the property"

9

and, because whether the backup originated from on or off the Properties is disputed, Defendant is accordingly not entitled to judgment as a matter of law. *Id.* The Court disagrees. Despite Plaintiff's arguments to the contrary, *Cheetham* and *Cameron* do not support a finding that the scope of the Amendatory Endorsement is ambiguous.

As discussed, in both cases, the courts interpreted water damage exclusions that were silent as to whether coverage extended to water damage losses regardless of whether they originated on or off the premises. *Cheetham*, 114 So. 3d at 260-63; *Cameron*, 726 F. App'x at 760-61. Both policies excluded coverage for losses caused by water backups through sewers, drains, sump, sump pump or related equipment but did not specify whether the exclusion applied regardless of where the loss originated from. *Cheetham*, 114 So. 3d at 262; *Cameron*, 726 F. App'x 760-61. In *Cheetham*, the court found that the other two paragraphs of the water damage exclusion referred to water damage caused by forces originating off the premises. *Cheetham*, 114 So. 3d at 262. This finding led the court to define the terms "sewer" and "drain" as these terms are commonly understood, namely, as "devices which carry water and sewage *away from* property." Cheetham, 114 So. 3d at 263-64 (quoting *Old Dominion Ins. Co. v. Elysee, Inc.*, 601 So. 2d 1243, 1245-46 (Fla. 3 DCA 2013)). The *Cameron* Court followed *Cheetham's* interpretation after determining that the water damage exclusion at issue was "virtually identical to the coverage provision in *Cheetham*."[4] *Cameron*, 726 F. App'x at 761-62. Both courts accordingly concluded that the water

---

[4] The court specifically noted that "Paragraphs 1, 2, and 4 of the Water Exclusion, like paragraphs a. and c. of the water damage exclusion in *Cheetham*, relate to water damage 'caused by outside forces unrelated to the residence premises' plumbing system,' such as weather-induced flooding … Reading the provisions of the Water Exclusion together, therefore, we conclude that Paragraph 3 of the Water Exclusion, like paragraph b. of the water-damage exclusion in *Cheetham*, 'pertains to damage caused by water not originating from the residence premises' plumbing system even though the water or water-borne material eventually backs up through a pipe and/or drain within the plumbing system of the residence premises." *Cameron*, 726 F. App'x at 762 (quoting *Cheetham*, 114 So. 3d at 262-63).

damage exclusions only excluded coverage of water losses that originate from off the premises.

*Cheetham* and *Cameron* are readily distinguishable because the plain language of the Amendatory Endorsement applies to water damage losses regardless of where they originate from. Like the policies in *Chabad* and *Purdy*, the Amendatory Endorsement explicitly applies regardless of whether the loss "originates on or off the described premises," thereby significantly expanding its scope. And unlike the water damage exclusions in *Cheetham* and *Cameron*, the Amendatory Endorsement lacks any language limiting its scope to losses that occur off the premises. The fact that the Amendatory Endorsement leaves the terms "sewer" and "drain" undefined fails to create ambiguity as to the scope of the policy, as the Amendatory Endorsement makes clear that losses caused by any device—be it a sewer, drain, sump or sump pump, or related equipment—are covered regardless of where they originate from. The Court accordingly finds that the Amendatory Endorsement is unambiguous and covers the disputed loss.

"When the words of a statute are unambiguous, then, this first canon [of statutory interpretation] is also the last: judicial inquiry is complete." *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1222 (11th Cir. 2001) (citing *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1186 (11th Cir. 1997) (alteration in original)).

Defendant has shown that the Amendatory Endorsement unambiguously covers Plaintiff's loss in its entirety, and there is no genuine dispute as to whether Plaintiff's loss is covered or whether Defendant has performed under the Policy. The Court therefore concludes that Defendant is entitled to judgment as a matter of law with respect to Plaintiff's Amended Complaint.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment, **ECF No. [27]**, is **GRANTED**. The Court will issue its final judgment in a separate

Case No. 22-cv-23346-BLOOM/Otazo-Reyes

order.

**DONE AND ORDERED** in Chambers at Miami, Florida, on October 9, 2023.

_____
**BETH BLOOM
UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record